IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 14-00029-04-CR-W-GAF |
| JAMES E. CALDWELL, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE
PURSUANT 18 U.S.C. §3582(C)(1)(a)(i) – COMPASSIONATE RELEASE**

The United States of America, through Timothy Garrison, United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to defendant's motion for compassionate release. The defendant seeks to have his 120-month sentence for conspiracy to distribute 28 grams or more of "crack" cocaine reduced to time served based upon extraordinary and compelling reasons. The defendant argues extraordinary and compelling reasons exist because the coronavirus (COVID-19) places him at risk if the defendant remains in the custody of the Bureau of Prisons (BOP). (D.E. 753.) Because the defendant has not exhausted his administrative remedies, the Government opposes the request and asks the Court to deny the defendant's motion.

**I. Procedural History**

On March 19, 2014, a superseding indictment in the Western District of Missouri charged Caldwell with conspiracy to distribute 280 grams or more of cocaine base, in Count One, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 and with five substantive counts of distribution of some amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

(D.E. 51.) Because Caldwell had prior felony drug convictions, the Government filed an information to enhance the statutory range of punishment. (D.E. 367.) On September 20, 2016, the defendant entered a plea of guilty, pursuant to a written plea agreement, to the lesser included offense of Count One of the Superseding Indictment charging him with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846 that is, conspiracy to distribute twenty-eight (28) grams or more of a mixture or substance containing a detectable amount of cocaine base. (D.E. 561, 565.) The § 851 notice remained in place. As a result, the statutory range of punishment for Caldwell was a mandatory minimum ten years to life, and at least eight years of supervised release.

On March 9, 2017, Caldwell appeared for sentencing for the instant case and the supervised release violation sentence in the 2005 criminal case. (D.E 624.) This Court imposed a 120-month sentence, consecutive to Caldwell's supervised release violation sentence of 24 months. (D.E. 625.) Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant's release date is April 4, 2024. (*See* https://www.bop.gov/inmateloc/.)

On April 6, 2020, the defendant filed a motion for compassionate release and asserted that the current situation regarding the coronavirus (COVID-19) places him at risk if he remains in custody. (D.E. 753.) The defendant has not asserted, however, that he has made a request for compassionate release to the warden of his facility. (D.E. 753.)

## II. First Step Act

Under the First Step Act, Congress provided inmates the ability to file a motion for compassionate release, an ability previously only vested in the United States Bureau of Prisons (BOP). Granting such a motion, however, requires a court to find that "extraordinary and compelling" circumstances justify release from prison or that some other criteria for release has been met.

Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).). The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. (§1B1.13 Commentary n.1(D).)

The statute, 18 U.S.C. §3582(c)(1)(A), adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of the BOP. The provision was amended by Section 606(b) of the First Step Act, effective December 21, 2018. As amended, the court may now act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v.*

*Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

### III. The Defendant Has Failed To Exhaust Administrative Remedies

This Court lacks authority to act on the defendant's motion for compassionate release at this time. The defendant's present motion fails to assert that he has filed his compassionate release request with BOP and therefore has not exhausted his available BOP avenue for relief. (D.E. 753.)

The statute requires that a request for compassionate release be presented first to the Bureau of Prisons for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the Bureau's failure to move on the defendant's behalf, may a defendant move for compassionate release in court. That restriction is mandatory, and it continues to serve an important function during the present crisis. The Government is very mindful of the concerns created by COVID-19, and BOP is making its best effort both to protect the inmate population and to address the unique circumstances of individual inmates.

The compassionate release statute provides, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

4

18 U.S.C. § 3582(c)(1)(A). The requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court.

The Third Circuit very recently held that a defendant seeking COVID-19 compassionate release must meet the 30-day exhaustion requirement with BOP:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like [defendant]. But the mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one.

*United States v. Raia*, 2020 WL — (3d Cir. Apr. 2, 2020) (citations omitted).

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only pursuant to statutory authorization. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a

5

previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Consistent with that principle of finality, Section 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced "based on" a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Given the plain language and purpose of the statute, the requirements for filing a sentence reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for compassionate release—are properly viewed as jurisdictional. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Section 3582(c) accordingly has been understood as

6

conferring the jurisdictional authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.[1]

We recognize that, in recent years, the Supreme Court has cautioned against imprecise use of the "jurisdictional" label, and explained that a statutory claim-processing rule, even if mandatory, is presumed to be nonjurisdictional absent a clear statement to the contrary. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848-50 (2019). A prescription is not jurisdictional merely because "it 'promotes important congressional objectives,'" *id.* at 1851 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 n.9 (2010)), and courts should not deem jurisdictional rules that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). But whether a prescription is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision. *Henderson*, 562 U.S. at 436. Here, the relevant factors indicate that Section 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district court lacks

---

[1] A number of courts have recognized that the prerequisites for relief under Section 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, are jurisdictional. *See, e.g.*, *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *overruled on other grounds by United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012); *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013); *United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010); *see also United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007) (canvassing history of judicial treatment of Rule 35 as jurisdictional and holding that Rule 35(a) and Section 3582(c)(1)(B) remain jurisdictional after *Bowles*). Other courts disagree. *See, e.g.*, *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013); *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015).

7

jurisdiction to consider a motion for compassionate release where the defendant has failed to satisfy the exhaustion requirement of Section 3582(c)(1)(A).[2]

While the Government maintains that the time limitation in Section 3582(c)(1)(A) is jurisdictional, given that it stands as an exception to the historic and fundamental rule that courts may not revisit a final criminal judgment, the point is ultimately academic. Even if the exhaustion requirement of Section 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The government raises the rule here, and it must be enforced.[3]

For all of these reasons, BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The provision of Section 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. Even if this Court could ignore the mandatory exhaustion requirement, which it cannot, it would be imprudent to prevent BOP from engaging in that review.

---

[2] Although we use the term "exhaustion requirement," to be clear, an inmate need not "exhaust" administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden.

[3] Indeed, even those courts that have concluded that the requirements of Section 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g.*, *Taylor*, 778 F.3d at 670 (recognizing that even if a court has the "power to adjudicate" a motion under Section 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original).

8

This remains true in the present crisis. The Government does not downplay the defendant's concerns in any way. The defendant has filed his motion for compassionate release based on concerns about the coronavirus pandemic. But the defendant has not fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

## IV. <u>BOP Response to the Coronavirus Pandemic</u>

This Court, like all citizens, is vividly aware that COVID-19 is an illness which has infected large numbers of people and caused many deaths in a short period of time. The BOP has accordingly taken significant measures in an effort to protect the health of the inmates in its charge. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO). On March 13, 2010, the BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following:

**Screening of Inmates and Staff:** All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff

9

registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

**Quarantine Logistics:** The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

**Suspension of Social Visits and Tours:** The BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. This suspension will be reevaluated at the end of the 30 days. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the Action Plan is in effect.

**Suspension of Legal Visits:** The BOP has also placed a 30-day hold on legal visits at which time the suspension will be reevaluated. Case-by-case approval for legal visits, after the attorney has been screened for infection in accordance with the screening protocols for prison staff, and confidential legal calls will be allowed in order to ensure access to counsel.

**Suspension of Inmate Movements:** The BOP has also ceased the movement of inmates and detainees among its facilities for at least the first 30 days that the Action Plan is in effect.

10

Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations. Likewise, all official staff travel has been cancelled, as has most staff training.

**Modified Operations:** Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing. Among the possible actions are staggering of meal times and recreation time.

Further details regarding the efforts made by the BOP to confront the issues presented by COVID-19 are available at: https://www.bop.gov/resources/news/20200313_covid-19.jsp, and at a daily updated resource page: https://www.bop.gov/coronavirus/index.jsp.[4]

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. BOP professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have nevertheless become ill, and more likely will in the weeks ahead. But the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and the BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.

---

[4] According to the resource page, due to the rapidly evolving nature of this public health crisis, the BOP will update the dashboard daily at 3:00 p.m. based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

11

Case 4:14-cr-00029-GAF   Document 754   Filed 04/24/20   Page 11 of 14

It must marshal its resources to care for inmates in the most efficient and beneficial manner possible.  It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.  And it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

In addition, the BOP has been granted wider authority to designate inmates for home confinement in its toolkit of available measures.  On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.  That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).  Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

Even though the Government has asked the Court to dismiss the defendant's motion, the Government is sensitive to the issues the defendant raises related to the coronavirus pandemic. The Government does not minimize the concern or the risk to inmates such as the defendant.  At

the present time, the BOP has taken aggressive action to mitigate the danger. If the situation changes, it will take action to attempt to protect all inmates, including those who may be more susceptible to adverse results due to age and existing ailments.

In this case, although the defendant expresses concern for his health related to the coronavirus pandemic, the defendant has not exhausted his administrative remedies as required by statute.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the motion be dismissed until such time that the defendant exhausts his administrative remedies.

Respectfully submitted this 23rd day of April, 2020.

                                          Timothy A. Garrison
                                          United States Attorney

By:    */s/ Brent Venneman*

                                          Brent Venneman
                                          Assistant United States Attorney

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a copy of the foregoing was delivered on April 23, 2020, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and defendant at:

    Inmate James E. Caldwell
    Reg. No. 18377
    Forrest City Low FCI
    1400 Dale Bumpers Road
    Forrest City, AR 72335

          */s/ Brent Venneman*
          Brent Venneman
          Assistant United States Attorney